IN THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

# NO. **15-12188-EE**

ARELIS NUNEZ,

Plaintiff/Appellant,

v.

J.P. MORGAN CHASE BANK, N.A., a Delaware Corporation,
MANUFACTURERS AND TRADERS TRUST COMPANY, a New York
Corporation, d.b.a. M and T Bank, BAYVIEW LOAN SERVICING LLC, a
Delaware Limited Liability Company,

Defendants/Appellees.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA
_____

APPELLANT ARELIS NUNEZ'S INITIAL BRIEF

Kimberly Sanchez Esq.
Fla. Bar. No. 17465
122 East Colonial Drive, Ste. 124
Orlando, Florida 32801
Telephone:  (407) 841-7777
Co-Counsel for Appellant Arelis
Nunez

Jeffrey N. Golant
Fla. Bar No. 0707732
The Law Offices of Jeffrey N. Golant, P.A.
1999 N. University Drive Ste. 213
Coral Springs, FL 33071
Telephone:  (954) 942-5270
Facsimile:   (954) 942-5272
Email: jgolant@jeffreygolantlaw.com
Co-Counsel for Appellant Arelis Nunez

Appeal Number: 15-12188-EE

Case Style: Arelis Nunez v. J.P. Morgan Chase Bank, N.A., et al

## CERTIFICATE OF INTERESTED PERSONS

1.  Bayview Loan Servicing LLC (Appellee)

2.  Blank Rome, LLP (Attorneys for Appellee Manufacturers and Traders Trust Company)

3.  Community Legal Service of Mid-Florida, Inc., (Co-counsel for Appellant)

4.  Daniel, W. Aaron, Esq., (Attorney for Appellee JPMorgan Chase Bank, N.A.)

5.  Eagle, Ashley R. Esq., (Attorney for Appellant)

6.  Gibson, Albert Douglas, Esq., (Attorney for Appellee Manufacturers and Traders Trust Company)

7.  Golant, Jeffrey N., Esq., (Attorney for Appellant)

8.  Hiraldo, Manuel Santiago, Esq., (Attorney for Appellee Manufacturers and Traders Trust Company)

9.  JPMorgan Chase Bank, N.A., (Appellee)

10. Kula & Associates, P.A., (Attorneys for Appellee JPMorgan Chase Bank, N.A.)

11. Kula, Elliot B., Esq., (Attorney for Appellee JPMorgan Chase Bank, N.A.)

12. Manufacturers and Traders Trust Company (Appellee)

13. Matthews, John Charles, Esq., (Attorney for Appellee JPMorgan Chase Bank, N.A.)

14. Nunez, Arelis (Appellant)

Appeal Number: 15-12188-EE

Case Style: Arelis Nunez v. J.P. Morgan Chase Bank, N.A., et al

15.   Presnel, Hon. Gregory A. Presnel (U.S. District Court Judge)

16.   Sanchez, Kimberly Laura, Esq., (Co-Counsel for Appellant)

17.   The Law Offices of Jeffrey N. Golant, P.A. (Attorneys for Appellant)

18.   Wargo & French, LLP (Attorney for Appellee JPMorgan Chase Bank, N.A.)

## CORPORATE DISCLOSURE STATEMENT

Plaintiff/Appellant Arelis Nunez is a natural person and therefore is not

obligated to file a Corporate Disclosure Statement pursuant to Federal Rule of

Appellate Procedure 26.1

By:   **/s/Jeffrey N. Golant Esq.**
Jeffrey N. Golant
Fla. Bar No. 0707732
The Law Offices of Jeffrey N. Golant, P.A.
1999 N. University Drive Ste. 213
Coral Springs, FL 33071
Telephone:   (954) 942-5270
Facsimile:   (954) 942-5272
Email:  jgolant@jeffreygolantlaw.com
Co-Counsel for Appellant Arelis Nunez

C-2 of 2

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellant requests oral argument because the first issue presented in this appeal presents a question of first impression regarding a recently amended federal statute.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ............................................ C-1 of 2

CORPORATE DISCLOSURE STATEMENT ............................................ C-2 of 2

STATEMENT REGARDING ORAL ARGUMENT ................................................ i

TABLE OF CITATIONS ........................................................................... iv

STATEMENT OF JURISDICTION ............................................................. 1

STATEMENT OF THE ISSUES ................................................................. 2

PRELIMINARY STATEMENT ................................................................. 2

STATEMENT OF THE CASE ................................................................... 3

1.    Nature of The Case .................................................................... 3

2.    Course of Proceedings ............................................................... 3

3.    Disposition Below ..................................................................... 5

4.    Statement of Facts ..................................................................... 6

5.    Standard of Review .................................................................. 10

SUMMARY OF THE ARGUMENT ......................................................... 11

ARGUMENT AND CITATIONS OF AUTHORITY ......................................... 13

I.    RESPA REQUIRES MORTGAGE SERVICERS TO CONDUCT A
      REASONABLE INVESTIGATION IN RESPONSE TO A
      BORROWER'S "NOTICE OF ERROR."  IN THE CASE AT BAR,
      APPELLANT'S ALLEGATIONS WERE SUFFICIENT TO
      DEMONSTRATE THAT CHASE, BAYVIEW, AND M AND T
      FAILED TO CONDUCT A REASONABLE INVESTIGATION IN
      RESPONSE TO ANY OF HER THREE "NOTICES OF ERROR." ......... 13

ii

II.   THE DISTRICT COURT IMPERMISSIBLY DREW FACTUAL INFERENCES THAT CONTRADICTED APPELLANT'S ALLEGATIONS AND IMPROPERLY DENIED HER REQUEST FOR LEAVE TO AMEND TO CLARIFY ANY POTENTIAL AMBIGUITY REGARDING THE RELEVANT FACTS. ......................... 18

III.  APPELLANT'S THIRD "NOTICE OF ERROR" SENT TO BAYVIEW AND M AND T WAS NOT DUPLICATIVE. ......................... 27

CONCLUSION .................................................................................................. 29

CERTIFICATE OF COMPLIANCE ...................................................................... 30

CERTIFICATE OF SERVICE ............................................................................... 31

ADDENDUM

# TABLE OF CITATIONS

**Cases**

*Boggio v. USAA Federal Sav. Bank*,
  696 F.3d 611 (6th Cir. 2012). ..............................................................16

*Bryant v. Dupree*,
  252 F.3d 1161 (11th Cir. 2001) .................................................... 25, 26

*Burger King v. Weaver*,
  169 F.3d 1310 (11th Cir. 1999) ..........................................................10

*Chevron v. Natural Resources Defense Council*,
  467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) ....................15

*Chiang v. Verizon New Eng. Inc.*,
  595 F.3d 26 (1st Cir. 2010)..................................................................16

*Foman v. Davis*,
  371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)...........................26

*Franklin v. Minnesota Mutual Life Ins. Co.*,
  97 F. Supp. 2d 1324 (S.D. Fla. 2000) ..................................................18

*Friedman v. Maspeth Fed. Loan and Sav. Ass'n*,
  F. Supp. 2d, 2014 WL 3473407 (E.D.N.Y. July 14, 2014) .................15

*Gorman v. Wolpoff & Abramson, LLP*,
  584 F.3d 1147 (9th Cir. 2009) .............................................................16

*Guccione v. J.P. Morgan Chase Bank, N.A.*,
  2015 WL. 1968114 (N.D. Cal. May 1st, 2015) ....................................13

*Hess v. F.D.I.C.*,
  519 U.S. 1087, 117 S. Ct. 760, 136 L. Ed. 2d 708 (1997) ...................11

*Hunnings v. Texaco, Inc.*,
  29 F.3d 1480 (11th Cir. 1994) .............................................................18

iv

*Johnson v. MBNA Am. Bank, NA*,
　357 F.3d 426 (4th Cir. 2004) ................................................................16

*Marais v. Chase Home Fin., LLC*,
　24 F. Supp. 3d 712, 2014 WL 2515474 (S.D.Ohio June 4, 2014) ....................15

*Medrano v. Flagstar Bank FSB*,
　704 F.3d 661 (9th Cir. 2012) ................................................... 16, 17, 28

*Motorcity of Jacksonville, Ltd. v. Southeast Bank N.A.*,
　83 F.3d 1317 (11th Cir. 1996) ...................................................... 10, 11

*Patton v. Triad Guarantee Ins. Corp.*,
　277 F.3d 1294 (11th Cir. 2002) ...........................................................15

*Rosenberg v. Gould*,
　554 F.3d 962 (11th Cir. 2009) ............................................................10

*Speaker v. U.S. Dept. of Health and Human Services*,
　623 F.3d 1371 (11th Cir. 2010) ..........................................................10

*Starkey v. JP Morgan Chase Bank, N.A.*,
　No. Civ.A. 13–694, 2013 WL 6669268 (S.D.Ohio Dec. 18, 2013), *aff'd,* 573
　Fed. App'x 444 (6th Cir. 2014) .................................................... 14, 15

*Thomason v. One West Bank*,
　596 Fed. App'x 736 (11th Cir. 2014) .......................................... 27, 28

*Vassalotti v. Wells Fargo Bank, N.A.*,
　732 F. Supp. 2d 503 (E.D.Pa.2010)....................................................15

*While v. PNC Financial Services Group Inc.*,
　2014 WL 4063344 (E.D. PA. August 15th, 2014) (Case No. 11-7928). ....... 15, 16

*Wilson v. Bank of America*,
　48 F. Supp. 3d 787 (E.D. PA. September 24th, 2014)
　(Case No. 14–2498). ...................................................................... 14, 15

**Statutes**

12 U.S.C. § 2605 et. seq. (Real Estate Settlement Procedures Act)............... *passim*

12 U.S.C. § 2605(e)(2)(b) ...................................................................2, 3

12 U.S.C. § 2605(e)(B) ...........................................................................13

12 U.S.C. § 2605(e)(B)(2) .......................................................................13

15 U.S.C. § 1681s–2(b)(1)(A) .................................................................16

28 U.S.C. § 1291 .......................................................................................1

28 U.S.C. § 1331 .......................................................................................1

28 U.S.C. § 1332 .......................................................................................1

28 U.S.C. § 1367 .......................................................................................1

## Rules

Fed. R. Civ. P. 12(b)(6)................................................................... *passim*

Fed. R. Civ. P. 15(a)(1)(B) ......................................................................4

## Regulations

12 C.F.R. § 1024.35(a).............................................................................14

12 C.F.R. § 1024.35(e).............................................................................14

12 C.F.R. § 1024.35(e)(A) .......................................................................19

12 C.F.R. § 1024.35(g)(1)(i).....................................................................27

12 C.F.R Part 1024 (Regulation X) ............................................... *passim*

12. C.F.R. § 1024.35(e)...............................................................................3

## <u>STATEMENT OF JURISDICTION</u>

This case involves a claim arising under the Real Estate Settlement

Procedures Act (12 U.S.C. § 2605), and a related state law tort claim.

Accordingly, the district court had federal question jurisdiction over the primary

claim under 28 U.S.C. § 1331.  In addition, the related state court claim arose from

the same transaction and occurrence, involved citizens of different states, and

presented an amount in controversy in excess of $75,000.  Accordingly, the district

court also had jurisdiction over the state law claim under 28 U.S.C. § 1332, and 28

U.S.C. § 1367.

This Court has jurisdiction under 28 U.S.C. § 1291 because this is an appeal

from a final decision of the district court.  The district court dismissed Appellant's

claim with prejudice on April 13th, 2015 (Docket Entry 44).   Appellant filed a

motion seeking reconsideration of that order on April 21st, 2015. (Docket Entry

45). The district court denied Appellant's motion seeking reconsideration of the

dismissal with prejudice and leave to amend on May 6th, 2015.  (Docket Entry 48).

Appellant filed her notice of appeal on May 15th, 2015.  (Docket Entry 49) Also on

May 15th, 2015, the clerk incorrectly re-designated that notice as a "Notice of

Interlocutory Appeal."  (Docket Entry 50).   The district court entered an order

instructing the clerk to close the case on May 19th, 2015.  (Docket Entry 52).

1

## STATEMENT OF THE ISSUES

(I.)      Whether the investigation that a mortgage servicer is required by 12

U.S.C. § 2605(e)(2)(b) to preform when a borrower asserts that there

has been an error on the borrower's account must be reasonable.

(II.)     Whether the district court impermissibly drew inferences in favor of

the non-moving party when it dismissed Appellant's operative

complaint with prejudice and denied her request for reconsideration so

that she could amend.

(III.)    Whether the district erred by concluding that Appellant's third

"Notice of Error" directed to the transferee servicer was duplicative.

## PRELIMINARY STATEMENT

Plaintiff/Appellant Arelis Nunez will be referred to hereafter as "Appellant."

Defendant J.P. Morgan Chase Bank will be referred to hereafter as "Chase."

Defendant Manufacturers and Traders Trust Co. d/b/a M and T Bank will be

referred to as "M and T."  Defendant Bayview Loan Servicing LLC will be

referred to as "Bayview."

2

# STATEMENT OF THE CASE

## 1.    Nature of The Case

This case involves an action for damages arising under the Real Estate Settlement Procedures Act (12 U.S.C. § 2605 et. seq. )(hereafter "RESPA"). Appellant asserted a RESPA claim against all three defendants (Chase, Bayview, and M and T) arising from their repeated failures to reasonably investigate and correct errors affecting Appellant's federally related mortgage loan.  In addition, Appellant also brought a state law claim for negligence against Chase.

## 2.    Course of Proceedings

This action commenced when Appellant filed a three count Complaint against Chase.  (Docket Entry 1).  At the time the initial Complaint was filed, Chase was still servicing Appellant's mortgage loan.  Count I of that Complaint alleged that Chase violated RESPA by failing to properly investigate and respond to the first of three "Notice of Error" sent pursuant to 12 U.S.C.  § 2605(e)(2)(b) and  its implementing Regulation X (12. C.F.R. § 1024.35(e)).  Count II contained a related claim for negligence, and Count III contained a claim for conversion. Appellant's first "Notice of Error" was attached as an exhibit to both the initial Complaint, and the First Amended Complaint.  (Docket Entry 1-1, p.2 -4;  Docket Entry 24-1).

3

Because Chase failed to reasonably investigate or correct the errors appellant identified in her first Notice of Error, she filed a lawsuit against Chase on September 10th, 2014.   In addition, Appellant sent a second "Notice of Error" to Chase after suit was filed, hoping that the Chase would appropriately respond to the second notice by investigating and correcting the error.  Meanwhile, the servicing of the subject loan was transferred to Bayview who serviced the loan jointly with M and T.  Due to the servicing transfer and Chase's on-going failure to address her concerns expressed in her two prior "Notices of  Error", Appellant sent yet another "Notice of Error"  to Bayview. This was her third "Notice of Error" but the first and only directed to Bayview.  Bayview never responded to that "Notice of Error" in any manner.

Because neither Chase nor Bayview ever addressed the concerns raised in any of her "Notices of Error", Appellant amended her Complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) on December 29th, 2014. (Docket Entry  24). The Amended Complaint joined Bayview and M and T, asserting a single RESPA claim against both of them.   Appellant also dropped the common law conversion claim asserted in Count III of the initial Complaint, but maintained the negligence claim asserted against Chase. Appellant also amended her original RESPA claim against Chase in order to allege supporting facts arising from Chase's failure to appropriately respond to the second "Notice of Error."

4

Appellant's second "Notice of Error" (sent to Chase) and third "Notice of Error" (the first and only sent to Bayview) are incorporated into the Amended Complaint as (Docket Entry 24-5 and 24-7).

**3.    <u>Disposition Below</u>**

Chase filed its own motion seeking dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 31). Bayview and M and T filed a joint motion to dismiss that was separate from Chase's. (Docket Entry 34).  The district court granted both motions, dismissing the Amended Complaint with prejudice. (Docket Entry 44).  Appellant moved for reconsideration of the dismissal with prejudice.  (Docket Entry  45).  In that motion, Appellant asserted that the district court drew factual inferences that were not consistent with the allegations of the Amended Complaint.  The order dismissing the action with prejudice repeatedly indicates that the errors giving rise to Appellant's RESPA claim had been corrected.  However, this was simply not the case.  Accordingly, in her motion seeking reconsideration, Appellant also requested that, to the extent her allegations were not sufficiently clear, she should be permitted to amend at least once.   The district court summarily denied that motion. (Docket Entry 48).   This appeal follows.

**4.** **Statement of Facts**

Appellant owns a home secured by a mortgage.  At all relevant times prior to

September 16th, 2014, Chase serviced her mortgage loan, although the debt

actually belonged to a different entity. (Amended Complaint, Docket Entry 24,

¶¶. 6,8 and 10).   In 2010, Appellant fell behind on her mortgage payments, leading

to the filing of a foreclosure in state court.  (Amended Complaint, Docket Entry 24,

¶.12). Chase brought that foreclosure action on behalf of the entity that owned the

mortgage debt, and a final foreclosure judgment was entered against Appellant

during the month of October 2012).  (Amended Complaint, Docket Entry 24, ¶.13).

But after the foreclosure judgment was entered and prior to the scheduled

foreclosure sale, Chase and Appellant entered into a loan modification agreement

that allowed her to resolve her arrearage, reinstate her mortgage, and avoid the loss

of her home. (Amended Complaint, Docket Entry 24, ¶.14).

Although Appellant complied with all of her obligations under the loan

modification agreement, Chase continued to prosecute the foreclosure action.

Ultimately, a foreclosure sale went forward, despite the fact that Appellant was in

full compliance with her obligations under the modification at that time. (Amended

Complaint, Docket Entry 24, ¶.¶. 14-15).

Because Chase continued to pursue foreclosure and collection activity

notwithstanding the modification,  Appellant sent her first "Notice of Error" to

Chase on March 3rd, 2014) (Amended Complaint, Docket Entry 24, ¶.16, Docket Entry 24-1). In addition to advising Chase that the foreclosure sale went forward when it should not have, Appellant's first "Notice of Error" notified Chase that "Chase failed to accept [Appellant's] December [2013] payment erroneously insisting that the amount agreed upon in the loan modification was insufficient." (Docket Entry 24-1, p.2). The first "Notice of Error" expressly invokes RESPA and Regulation X, and requests that Chase take appropriate corrective action. Appellant specifically suggested that in order to adequately respond, Chase should "investigate[] and correct[] the servicing errors that led Chase to reject Ms. Nunez's December [2013] payment , and take all necessary measures to restore her title to the subject property *and implement the terms of the loan modification agreement*." (Docket Entry 24-1, p.2)(Emphasis added). Chase's response is also attached to the Amended Complaint. (Docket Entry 24-2). In that response, Chase states "[w]e have completed our review and confirmed that there has not been any error with your client's loan." [1] (Docket Entry 24-2, p.1 second paragraph).

Chase's response also contains a chronology of the events leading to the modification and foreclosure, and indicates that Chase will cooperate with efforts to rescind the foreclosure sale. However, Chase's response does not address Appellant's concern that Chase was continuing to fail to recognize and implement

---

[1] The first "Notice of Error" was sent by Appellant's counsel, and Chase's response is directed to counsel.

7

the terms of the modification.  Far from recognizing this ongoing problem,   Chase

insisted that "there has not been any error…." (Docket Entry 24-2, p.1 second

paragraph).

Because her effort to invoke the RESPA/Regulation X error resolution

procedures with respect to Chase's underlying failure to recognize and implement

the terms of her loan modification had failed, Appellant filed suit against Chase on

September 10th, 2014.  After filing suit, Appellant tried to invoke the

RESPA/Regulation X error resolution process a second time, by sending Chase a

second "Notice of Error" (Docket Entry 24-5). Appellant's Second Notice of Error

complains of two errors. The first is not relevant to this appeal. But the second is

described as **"Continued Failure to Honor the Loan Modification Agreement."**

(Docket Entry 24-5, p.2)(Emphasis in the original).  That second "Notice of Error"

advises that "Chase has proceeded with collection efforts and foreclosure threats,

even though the loan modification agreement i[s] in place and Ms. Nunez has

made all the payments due thereunder when they were due." (Docket Entry 24-5,

p.2, second paragraph).   The second "Notice of Error" also states that "[i]t is

particularly vital that you act quickly as this loan is scheduled for a servicing

transfer, and that will likely make it more difficult to resolve this error." (Docket

Entry 24-5, p.2, second paragraph).  The Second "Notice of Error" incorporates an

August 14th, 2014 letter from Chase advising Appellant that she is in default

8

because she has "….failed to pay the required monthly installments commencing with the payment due July 1st 2013."[2] (Docket Entry 24-5, p.4 ¶.1). Chase again responded to the Second "Notice of Error" with a letter that proclaims in bold font that **"[w]e've confirmed that there hasn't been an error on our customer's account."** (Docket Entry 25-6, p.1). That letter also states that "the loan transferred [to Bayview and M and T] with the modified terms and monthly payment in place." (Docket Entry 25-6, p.3).

Notably, Chase's response to the second "Notice of Error" did *not* indicate that it had corrected any errors. Instead, it continued to insist that there were no errors at all. Accordingly, Appellant reasonably believed that Chase continued to take the position that she had "….failed to pay the required monthly installments commencing with the payment due July 1st 2013" and that a second foreclosure was imminent.[3] (Docket Entry 24-5, p.4 ¶.1).

---

[2] This provides further evidence that Chase had failed to recognize and implement the loan modification. Appellant's First Notice of Error reflects that the loan modification agreement was reached in January of 2013. (Docket Entry 24-1, p.2 first paragraph) She alleges that she fully complied with all of her obligations under the modification agreement. (Amended Complaint, Docket Entry 24, ¶.15). It naturally follows that Appellant had made payments after July of 2013, and Chase's assertion that she did not was consistent with its failure to recognize and implement the loan modification.

[3] In the order dismissing the Amended Complaint with prejudice, the district court repeatedly indicated that it believed that the loan modification was fully implemented by August 22nd, 2014. (Docket Entry, 44, p.4, p.7-8). These findings were contrary to Appellant's allegations and inconsistent with her version of the facts.

9

Particularly in light of Chase's continued insistence that there hadn't been any error, Appellant was concerned that Bayview and M and T would act upon Chase's prior threat to foreclose once again.  Accordingly, Appellant sent a third "Notice of Error" to Bayview.   That "Notice of Error" indicates that if Bayview was "…able to confirm that the loan modification has been completely boarded and your company will not take further collection activity as long as she complies",  Appellant would send payment using funds that had been held in Appellant's counsel's escrow account. (Docket Entry 24-7, p.2).  Neither Bayview nor M and T, responded to the third "Notice of Error" in any way. (Docket Entry 24, p.11 ¶.47).

**5.  Standard of Review**

When reviewing an order granting a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court applies a *de novo* standard of review. *See E.g. Speaker v. U.S. Dept. of Health and Human Service*s, 623 F.3d 1371, 1379 (11th Cir. 2010) citing *Rosenberg v. Gould,* 554 F.3d 962, 965 (11th Cir. 2009).

When reviewing the denial of a motion seeking leave to amend based on futility, this Court reviews the district court's ruling independently. *Burger King v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999) citing *Motorcity of Jacksonville, Ltd. v. Southeast Bank N.A.,* 83 F.3d 1317, 1323 (11th Cir. 1996) (en banc), *vacated on*

*other grounds sub nom Hess v. F.D.I.C.,* 519 U.S. 1087, 117 S. Ct. 760, 136

L. Ed. 2d 708 (1997)

## SUMMARY OF THE ARGUMENT

This district court erred when it dismissed Appellant's Amended Complaint

with prejudice and without leave to amend. This error appears to be largely based

on the district court's mistaken belief that the errors identified in Appellant's

"Notices of Error" were corrected.  However, the district court was required to

accept Appellant's allegation as true, and to draw all reasonable inferences in her

favor.  But instead, the district court drew unwarranted factual inferences in favor

of the Defendants, and effectively made factual findings that contradicted the

allegations in the operative Amended Complaint.

Both RESPA and Regulation X, which implements RESPA, were recently

amended. The new version of Regulation X (12 C.F.R Part 1024), requires

mortgage servicers to conduct a *reasonable* investigation in response to a

borrower's "Notice of Error."    While it is true that Chase responded to

Appellant's "Notices of Error", the Amended Complaint sufficiently alleges that

Chase's response was not based upon any reasonable investigation. At the very

minimum, there were questions of fact concerning the reasonableness of Chase's

investigation, and dismissal with prejudice was improper.

To the extent that there was any deficiency in Appellant's pleading that could have led the district court to misunderstand her allegations, Appellant should have been granted leave to amend to clarify her allegations. In her motion seeking reconsideration of the dismissal with prejudice, Appellant requested leave to amend, if necessary, to address any ambiguity in her Amended Complaint that led the district court to adopt the view of the facts described in the dismissal order. The district court summarily denied that motion.  In doing so, the district court erred.

Lastly, the district court also erred when it excused Bayview and M and T's complete failure to respond to Appellant's third Notice of Error directed to Bayview.  The district court found that Notice of Error to be duplicative, because the district court mistakenly concluded that Chase had fully corrected all of the related errors by the time the notice was sent.  However, Chase did not correct those errors. To the contrary they remained unresolved when the loan transferred to M and T and Bayview.  RESPA and Regulation X unambiguously require a mortgage servicer to respond to a Notice of Error.  Because Appellant notified Bayview and M and T of unresolved errors that continued to affect her account after the service transfer, the district court should not have excused their complete failure to respond.

## ARGUMENT AND CITATIONS OF AUTHORITY

**(I.) RESPA REQUIRES MORTGAGE SERVICERS TO CONDUCT A REASONABLE INVESTIGATION IN RESPONSE TO A BORROWER'S "NOTICE OF ERROR."  IN THE CASE AT BAR, APPELLANT'S ALLEGATIONS WERE SUFFICIENT TO DEMONSTRATE THAT CHASE, BAYVIEW, AND M AND T FAILED TO CONDUCT A REASONABLE INVESTIGATION IN RESPONSE TO ANY OF HER THREE "NOTICES OF ERROR."**

The RESPA provision requiring mortgage services to investigate and respond to correspondence from borrowers relating to potential errors on their mortgage accounts is found at 12 U.S.C. § 2605(e)(B).  RESPA refers to this sort of borrower inquiry as a "qualified written request."  RESPA requires that upon receipt of a "qualified written request", the servicer must either correct the asserted error, or "after conducting an investigation" provide the borrower with an explanation as to the reason why the servicer believes there has been no error, and a phone number for further assistance.  See 12 U.S.C. § 2605(e)(B)(2) .

Regulation X implements RESPA.  Both RESPA and Regulation X were amended in 2010 by the Dodd/Frank Wall Street Reform and Consumer Protection Act.  The Dodd/Frank Amendments were implemented on January 10th, 2014.  *See E.g. Guccione v. J.P. Morgan Chase Bank, N.A.*, 2015 WL. 1968114 *8 (N.D. Cal. May 1st, 2015)(Docket Number 3:14–cv–04587 LB). The amended version of Regulation X establishes error resolution procedures. It also provides that "[a]

13

qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section" 12 C.F.R. § 1024.35(a).

Under the recently amended provisions of 12 C.F.R. § 1024.35(e) upon receiving a Notice of Error, a mortgage servicer must respond by either:

> (A) Correct[ing] the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance;
>
> or
>
> (B) Conduct[ing] a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R § 1024.35(e)

As recently discussed in *Wilson v. Bank of America*, 48 F. Supp. 3d 787, 803-805 (E.D. PA. September 24th, 2014) (Case No. 14–2498), some courts had previously held that the prior  RESPA/Regulation X error resolution procedures did not impose any substantive duties upon a mortgage servicer when notified of a potential error.  *Id*. at 803- 804 citing *Starkey v. JP Morgan Chase Bank, N.A.,* No. Civ.A. 13–694, 2013 WL 6669268, at *4 (S.D.Ohio Dec. 18, 2013), *aff'd,* 573 Fed.

14

App'x 444 (6th Cir. 2014); *Vassalotti v. Wells Fargo Bank, N.A.,* 732 F. Supp. 2d
503 (E.D.Pa.2010).

However, *Wilson* points out that  Regulation X now specifically requires a
*reasonable* investigation,  and the inclusion of the word "reasonable" imposes a
substantive duty that is not discharged by a mere "procedural investigation." *Id.* at
804-805, citing *Friedman v. Maspeth Fed. Loan and Sav. Ass'n,* F. Supp. 2d, 2014
WL 3473407, at *9 (E.D.N.Y. July 14, 2014) and *Marais v. Chase Home Fin.,
LLC,* 24 F. Supp. 3d 712, 724, 2014 WL 2515474, at *9 (S.D.Ohio June 4, 2014)

The recent amendments to Regulation X, requiring a "reasonable"
investigation were promulgated by the Consumer Financial Protection Bureau
(CFPB) under authority expressly delegated by Congress.  As this Court previously
noted, the Department of Housing and Urban Development had been granted
congressional authority to promulgate implementing regulations under RESPA,
and those regulations were entitled to deference.  *Patton v. Triad Guarantee Ins.
Corp.,* 277 F.3d 1294, 1299  (11th Cir. 2002). *Citing Chevron v. Natural Resources
Defense Council,* 467 U.S. 837, 844, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).
The 2010 Dodd/Frank Wall Street Reform and Consumer Protection Act
transferred authority over RESPA to the newly created CFPB. *See While v. PNC
Financial Services Group Inc.,* 2014 WL 4063344 *2 n.14 (E.D. PA. August 15th,

15

2014)(Case No. 11-7928). Thus, the CFPB's interpretations of RESPA are also entitled to deference.

Furthermore, "Congress intended RESPA to serve a consumer protection purpose." *Medrano v. Flagstar Bank FSB*, 704 F.3d 661, 665-666 (9th Cir. 2012). "Accordingly, RESPA's provisions relating to loan servicing procedures should be 'construed liberally' to serve the statute's remedial purpose." *Id.* Construing RESPA and allowing a mortgage servicer to conduct an *unreasonable* investigation would not be consistent with Congress's consumer protection purpose.

The Fair Credit Reporting Act, a similar federal consumer protection statute, contains a similarly worded provision obligating furnishers of credit information to investigate consumer disputes. See 15 U.S.C. § 1681s–2(b)(1)(A). In *Boggio v. USAA Federal Sav. Bank*, 696 F.3d 611, 616 (6th Cir. 2012), the 6th Circuit "…join[ed] every circuit to have addressed this duty in holding that the investigation an information furnisher undertakes must be a reasonable one." Citing *Johnson v. MBNA Am. Bank, NA,* 357 F.3d 426, 430–31 (4th Cir. 2004); *Chiang v. Verizon New Eng. Inc.,* 595 F.3d 26, 37 (1st Cir. 2010); *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1154 (9th Cir. 2009).

Appellant respectfully submits that the case at bar illustrates the practical reason why a mortgage servicer's investigation into a borrower's "Notice of Error"

16

must be reasonable.  Here, Appellant repeatedly tried to notify both Chase and Bayview that there was a problem with the implementation of her loan modification. However, while Chase did respond to those communications, it never addressed that fundamental issue.  To the contrary, it insisted that there hadn't been any error at all.  As the district court noted, Chase did cooperate with Appellant's efforts to rescind the original erroneous foreclosure. But almost immediately after that, it also set the wheels in motion to start a second foreclosure. Despite Appellant's repeated efforts to notify Chase that it failed to recognize and implement the loan modification, it continued to robotically insist that there had been no error.

Moreover, as *Medrano* notes, RESPA must be construed liberally to serve its remedial purpose.  704 F.3d at 665-666 (9th Cir. 2012).  As Appellant's experience demonstrates, permitting mortgage servicers to rely on cursory investigations and non-responsive responses would render the RESPA/Regulation X error resolution procedures ineffective and provide no meaningful protection to borrowers.  Such a result would clearly not be consistent with RESPA's remedial purpose. Thus, this Court should hold that, like the Fair Credit Reporting Act, RESPA requires mortgage servicers to reasonably investigate a borrower's Notice of Error.

If Chase is held to the standard of a reasonable investigation, the dismissal with prejudice here cannot be affirmed. Appellant repeatedly notified both Chase

17

and Bayview that there were uncorrected errors on her account arising from the prolonged failure to recognize and implement the loan modification. Her allegations demonstrate that Chase never substantively responded to those concerns. When considering a motion to dismiss, the Court must accept all facts alleged as true and draw all inferences in the light most favorable to the non-moving party. *See E.g. Franklin v. Minnesota Mutual Life Ins. Co.,* 97 F. Supp. 2d 1324, 1326 (S.D. Fla. 2000) citing *Hunnings v. Texaco, Inc.,* 29 F.3d 1480, 1483 (11th Cir. 1994).    The fact that Chase repeatedly failed to address Appellant's concerns arising from its failure to implement and recognize the loan modification supports the reasonable inference that any investigation it might have done was not reasonable.

**(II.) THE DISTRICT COURT IMPERMISSIBLY DREW FACTUAL INFERENCES THAT CONTRADICTED APPELLANT'S ALLEGATIONS AND IMPROPERLY DENIED HER REQUEST FOR LEAVE TO AMEND TO CLARIFY ANY POTENTIAL AMBIGUITY REGARDING THE RELEVANT FACTS.**

As noted above, in considering the Rule 12(b)(6) motion, the district court was required to accept all facts alleged as true, and draw all inferences in the light most favorable to the non-moving party. *See E.g. Franklin v. Minnesota Mutual Life Ins. Co.,* 97 F. Supp. 2d 1324, 1326 (S.D. Fla. 2000) citing *Hunnings v. Texaco, Inc.,* 29 F.3d 1480, 1483 (11th Cir. 1994).    Instead, the district court erroneously concluded that Chase had corrected the errors that gave rise to

18

Appellant's "Notices of Error."  Notably, even though Chase repeatedly insisted

that no error occurred, the district court reframed Chase's response.  The district

court went so far as to say that:

> [q]uizzically, the conclusion that no error had occurred
> stands in contrast to the history traced out in the loan. A
> fairer assessment of the situation was that Chase
> reviewed the account, concluded that there was a
> problem (namely that the foreclosure proceeded when it
> should not have) and it was working on fixing the
> problem.
>
> (Docket Entry  44, p.7).

One problem with the district court's overly favorable interpretation of

Chase's response, is that it cannot be reconciled with the plain language of 12

C.F.R. § 1024.35(e)(A).  When a servicer corrects an error,  Regulation X requires

the servicer to advise the borrower, in writing of "..the effective date of the

correction."   But here, Chase didn't even claim to have corrected the error,

because it insisted that there was none.   Regardless, 12 C.F.R. § 1024.35(e)(A)

requires a detailed statement concerning any such corrections.  The district court's

construction of Chase's response here impermissible relaxed the standard.

Furthermore, the district court construed Appellant's Notices of Error too

narrowly.  It is true that one of the errors she asserted was that the foreclosure

proceeded when it should not have, and that Chase was somewhat responsive to

the particular error.  However, the district court overlooked the fact that Appellant

19

*also* complained about Chase's failure to recognize and implement the loan modification in both of the Notices of Error that she sent to Chase.  This failure was the underlying cause of the original improper foreclosure, and the threatened second foreclosure.  Chase did not address the failure to recognize and implement the loan modification, and its failure to do so demonstrates that its investigation into the issue was not reasonable, and therefore did not satisfy its obligations under RESPA and Regulation X.

Importantly, as discussed above, Chase  responded to both of the Notices of Error that Appellant sent to Chase by concluding there *was no error*.   Under RESPA and Regulation X, Chase was obligated to either correct the error, or conduct a reasonable investigation and explain the basis for its conclusion that there was no error.  Since Chase continually insisted that there was no error to begin with, it naturally follows that Chase did not take the position that it corrected the error.   Accordingly, there simply was no basis for the district court to infer that Chase did not mean what it said, and conclude that any error was timely corrected.  By drawing these inferences, the district court did not discharge its obligation to regard Appellant's allegations as true.  At the same time, the district court also drew unwarranted and strained inferences in favor of Chase.

The order dismissing Appellant's Amended Complaint with prejudice also contains a number of related factual conclusions that demonstrate that the district

court did not take Appellant's allegations as true.  These are:

**(1) "Chase then stated that the cancellation [of the loan modification] was later un-cancelled after the second rescission process was successful."** (Docket Entry. 44, p.4)(Emphasis Added).   While Chase did take position, Appellant alleged that Chase *still* did not recognize and implement the loan modification. Here, the district court appears to have accepted Chase's view of the facts expressed in its response to the second "Notice of Error" as true.  Because this assertion contradicts the Amended Complaint, the district court should not have resolved the issue in Chase's favor.  Instead, it was required to accept Appellant's allegations as true.

**(2).   "…the modified plan was implemented on August 22, 2014."** **(Docket Entry . 44, p.4)**(Emphasis added).   Here again, Chase did make the assertion in response to the second "Notice of Error."  But Appellant's Amended Complaint cannot be read as adopting Chase's position. Notably, this purported correction was asserted to have occurred only eight days after Chase's August 14th, 2014 letter notifying Appellant that Chase was accelerating her loan and commencing the foreclosure process once again. (Docket Entry 24-5, p.4)  Notably, Appellant incorporated Chase's August 14th, letter into her Second Notice of Error.  But Chase responded by insisting that "**"[w]e've confirmed that there hasn't been an error on our**

**customer's account."** (Docket Entry 25-6, p.1)(Emphasis in the original).

If the loan modification really had been implemented by August 22nd, 2014,

Chase was required to explain that its August 14th, 2014 letter was, in fact,

sent in error. But instead, it insisted that there was no error.

This underscores that there was substantial evidence, incorporated

into the Amended Complaint, refuting any claim by Chase that the problem

had been corrected by August 14th, 2014. At the very minimum, this

presented a factual dispute that could not have been appropriately addressed

in deciding a Rule 12(b)(6) motion.

Notably, even if the assertion that all the necessary corrections had

been made by August 22nd were accurate (and it wasn't), Appellant's first

Notice of Error was sent on March 3rd, 2014, and RESPA and Regulation X

require the appropriate investigation must be completed, and the required

corrections made, within 30 business days. Thus, even if Chase had

corrected the error by August 22nd, 2014 (and it didn't), that would not

justify the district court's conclusion that there was no RESPA violation on

Chase's part. To the contrary, it would confirm that Chase impermissibly

delayed its compliance with its RESPA/Regulation X obligations for several

months.

**(3). "The letters demonstrate that Chase's investigation was thorough and chronicled the history of the loan quite extensively."** (Docket Entry . 44, p.7)(Emphasis added).    Appellant disagrees.  Chase never accurately responded to the primary point that her letters raised -- Chase's ongoing failure acknowledge and implement the loan modification.   In any event, Appellant submits that decisions concerning the sufficiency of Chase's investigation are not appropriate in the context of a Rule 12(b)(6) motion, especially here were Appellant maintains that there were still unresolved errors on her account.   Even if the district court believed that Chase's investigation was "thorough", it should not have denied Appellant the opportunity to present evidence that it was not reasonable under the circumstances.

**(4). "In the event that an error has occurred, but will take some time to fix, a servicer is without recourse to accurately state the situation and comply with Regulation X's binary response options."** (Docket Entry. 44, p.7)(Emphasis added).   Here again, the district court refers to the recession of the foreclosure sale, but overlooks the threshold error arising from the failure to acknowledge and implement the loan modification.  This view of the events is far too favorable to Chase.  Appellant submits that there was no reason why Chase could not have implemented the loan modification within

23

RESPA and Regulation X's deadline. But even if there was a reason, there was no basis in the Amended Complaint for the Court to find that Case was powerless to address that problem. At the very least, this conclusion required evidence, and should not have been made in the context of a Rule 12(b)(6) motion.

**(5). "Chase appears to have done the best it could, given the circumstance, and complied with the letter and spirit of the law. Ultimately, Chase did fix the problem and the Plaintiff, after some time wrangling with Chase and the foreclosure process, was put in her desired modified repayment program and still has possession of her house."** (Docket Entry, 44, p. 7-8)(Emphasis Added). Once again, there is no support for the district court's conclusion that Appellant received the agreed upon loan modification in the Amended Complaint. Plaintiff did not allege that this happened, because it didn't happen. In fact, in her motion seeking reconsideration of the dismissal with prejudice and leave to amend, Appellant explains that "[e]ven now [April 21st, 2015] Bayview and M and T Bank continued to proceed as if there is no loan modification, and have recently threated her with filing a new foreclosure." (Docket Entry 45, p.11).

Appellant submits that the district court fundamentally misunderstood her allegations, and the factual basis for her claims. It appears that the

dismissal of the action with prejudice flows from the mistaken conclusion that Chase fixed all the underlying errors by August 22nd, 2014.  However, that simply wasn't what Appellant alleged, or what the evidence would have shown.   Appellant's actual allegations were sufficient to show that there was an unresolved error on Appellant's account arising from the continued failure to recognize and implement the loan modification.  That error was never corrected, and continues even now.

But even if the Amended Complaint was not drafted clearly enough to make this point, the dismissal with prejudice would nevertheless be improper.  After the dismissal order was entered, Appellant sought reconsideration.  (Docket Entry 45).  In that motion, Appellant sought leave to amend to clarify that district court's findings the errors relating to the loan modification were fully resolved was not consistent with her version of events, and that the district court had misunderstood the factual basis for her claim when it reached those conclusions.  (Docket Entry 45, p. 13).  But the district court summarily denied that motion, without stating its reasons.  (Docket Entry 48).   This too was error.

As this Court explained in *Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir. 2001), the district court's  discretion when denying leave to amend is "severely restricted" and may only be exercised

1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed;

(2) where allowing amendment would cause undue prejudice to the opposing party;

or (3) where amendment would be futile.

*Id*. at 1163 citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).

*Bryant* considered a situation where the Plaintiff had previously amended once as a matter of course. *Bryant* concludes as a matter of law that because the amendment was done as a matter of course, there had not been a "repeated failure to cure deficiencies by amendments previously allowed." *Id.* at 1163-1164.

Once Appellant knew that the district court misunderstood her claims and believed that the errors relating to the continued failed to recognize and implement the loan modification had been remedied, she could have drafted a Second Amended Complaint that emphasized that the problem remained unresolved. Since she had only amended once previously as a matter of course, she was entitled to at least one opportunity to amend. Presumably, the district court concluded that amendment was futile. However, any such conclusion would necessarily have been the consequence of the district court's erroneous factual conclusion that the error was corrected timely. The district court erred when it denied Appellant's

26

request that it vacate the dismissal of her action with prejudice and refused to permit her to amend.

### (III.)  APPELLANT'S  THIRD "NOTICE OF ERROR"  SENT TO BAYVIEW AND M AND T WAS NOT DUPLICATIVE.

Neither Bayview nor Chase ever responded to the third Notice of Error that Appellant sent directly to them.  Recently in *Thomason v. One West Bank,* 596 Fed. App'x  736, 740 (11th Cir. 2014),  this Court reversed a dismissal with prejudice of a similar RESPA claim where the RESPA plaintiff proffered a proposed amended complaint that alleged that mortgage servicer never responded to that borrower's  RESPA qualified written requests, finding that allegations that the servicer never responded were sufficient to state a cause of action. [4] Appellant's allegations here against Bayview and M and T are fundamentally the same as those in *Thomason.*  In both cases, there was no response whatsoever from the servicer.

In the case at bar, the district court found that Bayview and M and T's obligation to respond was excused by 12 C.F.R. § 1024.35(g)(1)(i), which provides an exception for duplicative notices of error. (Docket Entry 44, p.8).  In finding that Appellant's Notice of Error to Bayview and M and T were duplicative, the district court repeats its conclusion that "[t]he loan transferred with the modified

---

[4] As in the case at bar, *Thomason* also holds that the RESPA plaintiff was entitled to leave to amend to assert the claims raised in his proposed Amended Complaint and the district court erred when it denied that opportunity.

loan terms and monthly payment in place… Plaintiff's letter to Bayview dated October 8, 2014, hardly required a response when the asserted errors had been resolved prior to the transfer and the Plaintiff had been notified." (Docket Entry 44, p.9).   But as discussed above, the conclusion that "…the loan transferred with the modified terms in place and that the asserted errors had been resolved" is not supported by the Amended Complaint, and is entirely disputed.  To the contrary, as mentioned in the motion seeking rehearing, Bayview continued to proceed as if there were no modification in place, and to attempt  collect amounts that weren't owed while threatening a second foreclosure.  There was no other way for Appellant to alert the new servicer to the on-going problems that arose with Chase. Indeed, it was entirely reasonable to expect that the new servicer would investigate the issue, reach a different conclusion, and correct the error.  Furthermore, there was no justification for Bayview and M and T's complete failure to respond.  To the contrary, as this Court noted in *Thomason*,  RESPA and Regulation X obligated them to respond.  Particularly in light of RESPA's remedial purpose described in *Medrano* a subsequent servicer should be required to conduct its own investigation regarding potential errors made by a predecessor.   In any event, as a result Bayview and M and T's failure to comply with their own independent obligations under RESPA and Regulation X, the unresolved errors continue even now.

28

## <u>CONCLUSION</u>

For the reasons described above,  Appellant Arelis Nunez respectfully requests that this Honorable Court reverse the dismissal with prejudice of her Amended Complaint.

Respectfully submitted,

**/s/Jeffrey N. Golant Esq.**
Jeffrey N. Golant
Fla. Bar No. 0707732
The Law Offices of Jeffrey N. Golant, P.A.
1999 N. University Drive Ste. 213
Coral Springs, FL 33071
Telephone:  (954) 942-5270
Facsimile:   (954) 942-5272
Email: jgolant@jeffreygolantlaw.com
Co-Counsel for Appellant Arelis Nunez

COMMUNITY LEGAL SERVICES
OF MID-FLORIDA

Kimberly Sanchez Esq.
Fla. Bar. No. 17465
122 East Colonial Drive, Ste. 124
Orlando, Florida 32801
Telephone:  (407) 841-7777
Co-Counsel for Appellant Arelis Nunez

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because this brief contains 6,301 words, excluding the parts of the

brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32 (a)(6) because this

brief has been prepared in a proportionally spaced typeface using Microsoft Word

2010 in 14 point Times New Roman.

<u>**/s/Jeffrey N. Golant Esq.**</u>
Jeffrey N. Golant
Fla. Bar No. 0707732
The Law Offices of Jeffrey N. Golant, P.A.
1999 N. University Drive Ste. 213
Coral Springs, FL 33071
Telephone:  (954) 942-5270
Facsimile:   (954) 942-5272
Email: jgolant@jeffreygolantlaw.com
Co-Counsel for Appellant Arelis Nunez

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 1st, 2015, I electronically filed the foregoing

document with the Clerk of Court using CM/ECF.  I also certify that the foregoing

document is being served this day on all counsel of record identified below by

notice of electronic filing generated by CM/ECF.

Elliot Burt Kula
William Aaron Daniel
**Kula & Associates, P.A.**
11900 Biscayne Blvd. Ste. 310
North Miami, FL 33181-2754
Telephone: (305) 354-3858
Facsimile: (305) 354-3822
elliot@kulalegal.com

Manuel Santiago Hiraldo
**Blank Rome LLP**
500 E. Broward Blvd. Ste. 2100
Fort Lauderdale, FL 33394
Telephone: (954) 512-1800
mhiraldo@blankrome.com

Albert D. Gibson
**Blank Rome, LLP**
1200 N. Federal Hwy. Ste. 312
Boca Raton, FL 33432
Telephone: (561) 417-8100
AGibson@BlankRome.com

John Charles Matthews
**Wargo & French, LLP**
201 S. Biscayne Blvd. Ste. 1000
Miami, FL 33131
Telephone: (305) 777-6000
jmatthews@wargofrench.com

31

**/s/Jeffrey N. Golant Esq.**

Jeffrey N. Golant

Fla. Bar No. 0707732

The Law Offices of Jeffrey N. Golant, P.A.

1999 N. University Drive Ste. 213

Coral Springs, FL 33071

Telephone:   (954) 942-5270

Facsimile:    (954) 942-5272

Email: jgolant@jeffreygolantlaw.com

Co-Counsel for Appellant Arelis Nunez

**ADDENDUM**

# ADDENDUM

12 U.S.C. § 2605 .............................................................................ADD 1

12 C.F.R. § 1024.35 .......................................................................ADD 13

12 U.S.C.A. § 2605

§ 2605. Servicing of mortgage loans and administration of escrow accounts

Effective: January 21, 2013

(a) Disclosure to applicant relating to assignment, sale, or transfer of loan servicing

Each person who makes a federally related mortgage loan shall disclose to each person who applies for the loan, at the time of application for the loan, whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding.

(b) Notice by transferor of loan servicing at time of transfer

(1) Notice requirement

Each servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person.

(2) Time of notice

(A) In general

Except as provided under subparagraphs (B) and (C), the notice required under paragraph (1) shall be made to the borrower not less than 15 days before the effective date of transfer of the servicing of the mortgage loan (with respect to which such notice is made).

(B) Exception for certain proceedings

The notice required under paragraph (1) shall be made to the borrower not more than 30 days after the effective date of assignment, sale, or transfer of the servicing of the mortgage loan (with respect to which such notice is made) in any case in which the assignment, sale, or transfer of the servicing of the mortgage loan is preceded by--

ADD1

**(i)** termination of the contract for servicing the loan for cause;

**(ii)** commencement of proceedings for bankruptcy of the servicer; or

**(iii)** commencement of proceedings by the Federal Deposit Insurance Corporation or the Resolution Trust Corporation for conservatorship or receivership of the servicer (or an entity by which the servicer is owned or controlled).

(C) Exception for notice provided at closing

The provisions of subparagraphs (A) and (B) shall not apply to any assignment, sale, or transfer of the servicing of any mortgage loan if the person who makes the loan provides to the borrower, at settlement (with respect to the property for which the mortgage loan is made), written notice under paragraph (3) of such transfer.

(3) Contents of notice

The notice required under paragraph (1) shall include the following information:

**(A)** The effective date of transfer of the servicing described in such paragraph.

**(B)** The name, address, and toll-free or collect call telephone number of the transferee servicer.

**(C)** A toll-free or collect call telephone number for (i) an individual employed by the transferor servicer, or (ii) the department of the transferor servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing.

**(D)** The name and toll-free or collect call telephone number for (i) an individual employed by the transferee servicer, or (ii) the department of the transferee servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing.

**(E)** The date on which the transferor servicer who is servicing the mortgage loan before the assignment, sale, or transfer will cease to accept payments relating to the loan and the date on which the transferee servicer will begin to accept such payments.

**(F)** Any information concerning the effect the transfer may have, if any, on the terms of or the continued availability of

**ADD2**

mortgage life or disability insurance or any other type of optional insurance and what action, if any, the borrower must take to maintain coverage.

**(G)** A statement that the assignment, sale, or transfer of the servicing of the mortgage loan does not affect any term or condition of the security instruments other than terms directly related to the servicing of such loan.

(c) Notice by transferee of loan servicing at time of transfer

(1) Notice requirement

Each transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or transfer.

(2) Time of notice

(A) In general

Except as provided in subparagraphs (B) and (C), the notice required under paragraph (1) shall be made to the borrower not more than 15 days after the effective date of transfer of the servicing of the mortgage loan (with respect to which such notice is made).

(B) Exception for certain proceedings

The notice required under paragraph (1) shall be made to the borrower not more than 30 days after the effective date of assignment, sale, or transfer of the servicing of the mortgage loan (with respect to which such notice is made) in any case in which the assignment, sale, or transfer of the servicing of the mortgage loan is preceded by--

**(i)** termination of the contract for servicing the loan for cause;

**(ii)** commencement of proceedings for bankruptcy of the servicer; or

**(iii)** commencement of proceedings by the Federal Deposit Insurance Corporation or the Resolution Trust Corporation for conservatorship or receivership of the servicer (or an entity by which the servicer is owned or controlled).

**ADD3**

(C) Exception for notice provided at closing

The provisions of subparagraphs (A) and (B) shall not apply to any assignment, sale, or transfer of the servicing of any mortgage loan if the person who makes the loan provides to the borrower, at settlement (with respect to the property for which the mortgage loan is made), written notice under paragraph (3) of such transfer.

(3) Contents of notice

Any notice required under paragraph (1) shall include the information described in subsection (b)(3) of this section.

(d) Treatment of loan payments during transfer period

During the 60-day period beginning on the effective date of transfer of the servicing of any federally related mortgage loan, a late fee may not be imposed on the borrower with respect to any payment on such loan and no such payment may be treated as late for any other purposes, if the payment is received by the transferor servicer (rather than the transferee servicer who should properly receive payment) before the due date applicable to such payment.

(e) Duty of loan servicer to respond to borrower inquiries

(1) Notice of receipt of inquiry

(A) In general

If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

(B) Qualified written request

For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

WestlawNext® © 2015 Thomson Reuters. No claim to original U.S. Government Works.

**ADD4**

**(ii)** includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

(2) Action with respect to inquiry

Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--

**(A)** make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

**(B)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

**(i)** to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

**(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

**(C)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

**(i)** information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

**(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

(3) Protection of credit rating

During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681a of Title 15).

**ADD5**

(4) Limited extension of response time

The 30-day period described in paragraph (2) may be extended for not more than 15 days if, before the end of such 30-day period, the servicer notifies the borrower of the extension and the reasons for the delay in responding.

(f) Damages and costs

Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

(1) Individuals

In the case of any action by an individual, an amount equal to the sum of--

**(A)** any actual damages to the borrower as a result of the failure; and

**(B)** any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.

(2) Class actions

In the case of a class action, an amount equal to the sum of--

**(A)** any actual damages to each of the borrowers in the class as a result of the failure; and

**(B)** any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not greater than $2,000 for each member of the class, except that the total amount of damages under this subparagraph in any class action may not exceed the lesser of--

**(i)** $1,000,000; or

**(ii)** 1 percent of the net worth of the servicer.

**ADD6**

(3) Costs

In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.

(4) Nonliability

A transferor or transferee servicer shall not be liable under this subsection for any failure to comply with any requirement under this section if, within 60 days after discovering an error (whether pursuant to a final written examination report or the servicer's own procedures) and before the commencement of an action under this subsection and the receipt of written notice of the error from the borrower, the servicer notifies the person concerned of the error and makes whatever adjustments are necessary in the appropriate account to ensure that the person will not be required to pay an amount in excess of any amount that the person otherwise would have paid.

(g) Administration of escrow accounts

If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due. Any balance in any such account that is within the servicer's control at the time the loan is paid off shall be promptly returned to the borrower within 20 business days or credited to a similar account for a new mortgage loan to the borrower with the same lender.

(h) Preemption of conflicting State laws

Notwithstanding any provision of any law or regulation of any State, a person who makes a federally related mortgage loan or a servicer shall be considered to have complied with the provisions of any such State law or regulation requiring notice to a borrower at the time of application for a loan or transfer of the servicing of a loan if such person or servicer complies with the requirements under this section regarding timing, content, and procedures for notification of the borrower.

(i) Definitions

For purposes of this section:

(1) Effective date of transfer

**ADD7**

The term "effective date of transfer" means the date on which the mortgage payment of a borrower is first due to the transferee servicer of a mortgage loan pursuant to the assignment, sale, or transfer of the servicing of the mortgage loan.

(2) Servicer

The term "servicer" means the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan). The term does not include--

(A) the Federal Deposit Insurance Corporation or the Resolution Trust Corporation, in connection with assets acquired, assigned, sold, or transferred pursuant to section 1823(c) of this title or as receiver or conservator of an insured depository institution; and

(B) the Government National Mortgage Association, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Resolution Trust Corporation, or the Federal Deposit Insurance Corporation, in any case in which the assignment, sale, or transfer of the servicing of the mortgage loan is preceded by--

(i) termination of the contract for servicing the loan for cause;

(ii) commencement of proceedings for bankruptcy of the servicer; or

(iii) commencement of proceedings by the Federal Deposit Insurance Corporation or the Resolution Trust Corporation for conservatorship or receivership of the servicer (or an entity by which the servicer is owned or controlled).

(3) Servicing

The term "servicing" means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

(j) Transition

(1) Originator liability

ADD8

A person who makes a federally related mortgage loan shall not be liable to a borrower because of a failure of such person to comply with subsection (a) of this section with respect to an application for a loan made by the borrower before the regulations referred to in paragraph (3) take effect.

(2) Servicer liability

A servicer of a federally related mortgage loan shall not be liable to a borrower because of a failure of the servicer to perform any duty under subsection (b), (c), (d), or (e) of this section that arises before the regulations referred to in paragraph (3) take effect.

(3) Regulations and effective date

The Bureau shall establish any requirements necessary to carry out this section. Such regulations shall include the model disclosure statement required under subsection (a)(2) of this section.

(k) Servicer prohibitions

(1) In general

A servicer of a federally related mortgage shall not--

(A) obtain force-placed hazard insurance unless there is a reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance;

(B) charge fees for responding to valid qualified written requests (as defined in regulations which the Bureau of Consumer Financial Protection shall prescribe) under this section;

(C) fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties;

(D) fail to respond within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan; or

(E) fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter.

**ADD9**

(2) Force-placed insurance defined

For purposes of this subsection and subsections (l) and (m), the term "force-placed insurance" means hazard insurance coverage obtained by a servicer of a federally related mortgage when the borrower has failed to maintain or renew hazard insurance on such property as required of the borrower under the terms of the mortgage.

(l) Requirements for force-placed insurance

A servicer of a federally related mortgage shall not be construed as having a reasonable basis for obtaining force-placed insurance unless the requirements of this subsection have been met.

(1) Written notices to borrower

A servicer may not impose any charge on any borrower for force-placed insurance with respect to any property securing a federally related mortgage unless--

(A) the servicer has sent, by first-class mail, a written notice to the borrower containing--

(i) a reminder of the borrower's obligation to maintain hazard insurance on the property securing the federally related mortgage;

(ii) a statement that the servicer does not have evidence of insurance coverage of such property;

(iii) a clear and conspicuous statement of the procedures by which the borrower may demonstrate that the borrower already has insurance coverage; and

(iv) a statement that the servicer may obtain such coverage at the borrower's expense if the borrower does not provide such demonstration of the borrower's existing coverage in a timely manner;

(B) the servicer has sent, by first-class mail, a second written notice, at least 30 days after the mailing of the notice under subparagraph (A) that contains all the information described in each clause of such subparagraph; and

WestlawNext® © 2015 Thomson Reuters. No claim to original U.S. Government Works.

**ADD10**

**(C)** the servicer has not received from the borrower any demonstration of hazard insurance coverage for the property securing the mortgage by the end of the 15-day period beginning on the date the notice under subparagraph (B) was sent by the servicer.

(2) Sufficiency of demonstration

A servicer of a federally related mortgage shall accept any reasonable form of written confirmation from a borrower of existing insurance coverage, which shall include the existing insurance policy number along with the identity of, and contact information for, the insurance company or agent, or as otherwise required by the Bureau of Consumer Financial Protection.

(3) Termination of force-placed insurance

Within 15 days of the receipt by a servicer of confirmation of a borrower's existing insurance coverage, the servicer shall--

**(A)** terminate the force-placed insurance; and

**(B)** refund to the consumer all force-placed insurance premiums paid by the borrower during any period during which the borrower's insurance coverage and the force-placed insurance coverage were each in effect, and any related fees charged to the consumer's account with respect to the force-placed insurance during such period.

(4) Clarification with respect to Flood Disaster Protection Act

No provision of this section shall be construed as prohibiting a servicer from providing simultaneous or concurrent notice of a lack of flood insurance pursuant to section 4012a(e) of Title 42.

(m) Limitations on force-placed insurance charges

All charges, apart from charges subject to State regulation as the business of insurance, related to force-placed insurance imposed on the borrower by or through the servicer shall be bona fide and reasonable.

**CREDIT(S)**

(Pub.L. 93-533, § 6, as added Pub.L. 101-625, Title IX, § 941, Nov. 28, 1990, 104 Stat. 4405; amended Pub.L. 102-27, Title III, § 312(a), Apr. 10, 1991, 105 Stat. 154; Pub.L. 103-325, Title III, § 345, Sept. 23, 1994, 108 Stat. 2239; Pub.L. 104-208, Div. A, Title II, § 2103(a), Sept. 30, 1996, 110 Stat. 3009-399; Pub.L. 111-203, Title X, § 1098(4), Title XIV, § 1463, July 21, 2010, 124 Stat. 2104, 2182.)

**ADD11**

§ 2605. Servicing of mortgage loans and administration of escrow..., 12 USCA § 2605

Notes of Decisions (205)

12 U.S.C.A. § 2605, 12 USCA § 2605
Current through P.L. 114-21 (excluding P.L. 114-18) approved 5-29-2015

**End of Document**                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

**ADD12**

12 C.F.R. § 1024.35

§ 1024.35 Error resolution procedures.

Effective: January 10, 2014

(a) Notice of error. A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred. A notice on a payment coupon or other payment form supplied by the servicer need not be treated by the servicer as a notice of error. A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section, and a servicer must comply with all requirements applicable to a notice of error with respect to such qualified written request.

(b) Scope of error resolution. For purposes of this section, the term "error" refers to the following categories of covered errors:

(1) Failure to accept a payment that conforms to the servicer's written requirements for the borrower to follow in making payments.

(2) Failure to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law.

(3) Failure to credit a payment to a borrower's mortgage loan account as of the date of receipt in violation of 12 CFR 1026.36(c)(1).

(4) Failure to pay taxes, insurance premiums, or other charges, including charges that the borrower and servicer have voluntarily agreed that the servicer should collect and pay, in a timely manner as required by § 1024.34(a), or to refund an escrow account balance as required by § 1024.34(b).

(5) Imposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower.

(6) Failure to provide an accurate payoff balance amount upon a borrower's request in violation of section 12 CFR 1026.36(c)(3).

(7) Failure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, as required

ADD13

by § 1024.39.

(8) Failure to transfer accurately and timely information relating to the servicing of a borrower's mortgage loan account to a transferee servicer.

(9) Making the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process in violation of § 1024.41(f) or (j).

(10) Moving for foreclosure judgment or order of sale, or conducting a foreclosure sale in violation of § 1024.41(g) or (j).

(11) Any other error relating to the servicing of a borrower's mortgage loan.

(c) Contact information for borrowers to assert errors. A servicer may, by written notice provided to a borrower, establish an address that a borrower must use to submit a notice of error in accordance with the procedures in this section. The notice shall include a statement that the borrower must use the established address to assert an error. If a servicer designates a specific address for receiving notices of error, the servicer shall designate the same address for receiving information requests pursuant to § 1024.36(b). A servicer shall provide a written notice to a borrower before any change in the address used for receiving a notice of error. A servicer that designates an address for receipt of notices of error must post the designated address on any Web site maintained by the servicer if the Web site lists any contact address for the servicer.

(d) Acknowledgment of receipt. Within five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error.

(e) Response to notice of error.

(1) Investigation and response requirements.

(i) In general. Except as provided in paragraphs (f) and (g) of this section, a servicer must respond to a notice of error by either:

(A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

ADD14

(B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

(ii) Different or additional error. If during a reasonable investigation of a notice of error, a servicer concludes that errors occurred other than, or in addition to, the error or errors alleged by the borrower, the servicer shall correct all such additional errors and provide the borrower with a written notification that describes the errors the servicer identified, the action taken to correct the errors, the effective date of the correction, and contact information, including a telephone number, for further assistance.

(2) Requesting information from borrower. A servicer may request supporting documentation from a borrower in connection with the investigation of an asserted error, but may not:

(i) Require a borrower to provide such information as a condition of investigating an asserted error; or

(ii) Determine that no error occurred because the borrower failed to provide any requested information without conducting a reasonable investigation pursuant to paragraph (e)(1)(i)(B) of this section.

(3) Time limits.

(i) In general. A servicer must comply with the requirements of paragraph (e)(1) of this section:

(A) Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.

(B) Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

(C) For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

(ii) Extension of time limit. For asserted errors governed by the time limit set forth in paragraph (e)(3)(i)(C) of this section, a servicer may extend the time period for responding by an additional 15 days (excluding legal public holidays, Saturdays, and Sundays) if, before the end of the 30–day period, the servicer notifies the borrower of the extension and the reasons for the extension in writing. A servicer may not extend the time period for responding to errors asserted under paragraph (b)(6), (9), or (10) of this section.

(4) Copies of documentation. A servicer shall provide to the borrower, at no charge, copies of documents and information relied upon by the servicer in making its determination that no error occurred within 15 days (excluding legal public holidays, Saturdays, and Sundays) of receiving the borrower's request for such documents. A servicer is not required to provide documents relied upon that constitute confidential, proprietary or privileged information. If a servicer withholds documents relied upon because it has determined that such documents constitute confidential, proprietary or privileged information, the servicer must notify the borrower of its determination in writing within 15 days (excluding legal public holidays, Saturdays, and Sundays) of receipt of the borrower's request for such documents.

(f) Alternative compliance.

(1) Early correction. A servicer is not required to comply with paragraphs (d) and (e) of this section if the servicer corrects the error or errors asserted by the borrower and notifies the borrower of that correction in writing within five days (excluding legal public holidays, Saturdays, and Sundays) of receiving the notice of error.

(2) Error asserted before foreclosure sale. A servicer is not required to comply with the requirements of paragraphs (d) and (e) of this section for errors asserted under paragraph (b)(9) or (10) of this section if the servicer receives the applicable notice of an error seven or fewer days before a foreclosure sale. For any such notice of error, a servicer shall make a good faith attempt to respond to the borrower, orally or in writing, and either correct the error or state the reason the servicer has determined that no error has occurred.

(g) Requirements not applicable.

(1) In general. A servicer is not required to comply with the requirements of paragraphs (d), (e), and (i) of this section if the servicer reasonably determines that any of the following apply:

(i) Duplicative notice of error. The asserted error is substantially the same as an error previously asserted by the borrower for which the servicer has previously complied with its obligation to respond pursuant to paragraphs (d) and (e) of this section, unless the borrower provides new and material information to support the asserted error. New and material information means information that was not reviewed by the servicer in connection with investigating a prior notice of the same error and is reasonably likely to change the servicer's prior determination about the error.

(ii) Overbroad notice of error. The notice of error is overbroad. A notice of error is overbroad if the servicer cannot reasonably determine from the notice of error the specific error that the borrower asserts has occurred on a borrower's account. To the extent a servicer can reasonably identify a valid assertion of an error in a notice of error that is otherwise

overbroad, the servicer shall comply with the requirements of paragraphs (d), (e) and (i) of this section with respect to that asserted error.

(iii) Untimely notice of error. A notice of error is delivered to the servicer more than one year after:

(A) Servicing for the mortgage loan that is the subject of the asserted error was transferred from the servicer receiving the notice of error to a transferee servicer; or

(B) The mortgage loan is discharged.

(2) Notice to borrower. If a servicer determines that, pursuant to this paragraph (g), the servicer is not required to comply with the requirements of paragraphs (d), (e), and (i) of this section, the servicer shall notify the borrower of its determination in writing not later than five days (excluding legal public holidays, Saturdays, and Sundays) after making such determination. The notice to the borrower shall set forth the basis under paragraph (g)(1) of this section upon which the servicer has made such determination.

(h) Payment requirements prohibited. A servicer shall not charge a fee, or require a borrower to make any payment that may be owed on a borrower's account, as a condition of responding to a notice of error.

(i) Effect on servicer remedies.

(1) Adverse information. After receipt of a notice of error, a servicer may not, for 60 days, furnish adverse information to any consumer reporting agency regarding any payment that is the subject of the notice of error.

(2) Remedies permitted. Except as set forth in this section with respect to an assertion of error under paragraph (b)(9) or (10) of this section, nothing in this section shall limit or restrict a lender or servicer from pursuing any remedy it has under applicable law, including initiating foreclosure or proceeding with a foreclosure sale.

**Credits**

[78 FR 60437, Oct. 1, 2013]

SOURCE: 76 FR 44242, July 22, 2011; 76 FR 78981, Dec. 20, 2011; 78 FR 10873, Feb. 14, 2013; 78 FR 10876, Feb. 14, 2013; 78 FR 69753, Nov. 21, 2013, unless otherwise noted.

**ADD17**

§ 1024.35 Error resolution procedures., 12 C.F.R. § 1024.35

AUTHORITY: 12 U.S.C. 2603–2605, 2607, 2609, 2617, 5512, 5532, 5581.

Notes of Decisions (4)

Current through June 30, 2015; 80 FR 37527.

**End of Document**                                          © 2015 Thomson Reuters. No claim to original U.S. Government Works.

**ADD18**